[Civ. No. 8283.   Third Dist.   Dec. 9, 1953.]

WILLIAM FRANKE, Appellant, v. L. J. CLAUS et al., Respondents.

Brantley W. Dobbins and Allan H. Fish for Appellant.

O'Hara, Randall, Castagnetto & Kilpatrick for Respondents.

SCHOTTKY, J.—Plaintiff, on March 22, 1950, commenced an action against defendants, alleging that said defendants became indebted to plaintiff on an open book account "for labor performed and materials furnished in and about the alteration to, addition to and completion of a certain store building owned by defendants and located at then known Number 926 Tennessee Street in the above City, County and State [City of Vallejo, County of Solano, State of California], in the sum of Two Thousand Ninety-five and 06/100 Dollars ($2,095.06); that said labor performed and materials furnished were at the special instance and request of said defendants." Defendant Claus filed an answer denying the material allegations of the complaint. There was no service

of summons on defendant Schamun and he did not appear in the action, and prior to the commencement of the trial on October 25, 1951, plaintiff filed a dismissal of the complaint as to defendant Schamun. (While the name of defendant Schamun appears in the title on the clerk's transcript and reporter's transcript and also in the pleadings, findings and judgment as ''Schuman,'' we have ascertained from the reporter's transcript and the original exhibits that his correct name as ''Schamun'' and we shall, therefore, use the name of ''Schamun'' throughout this opinion.)

At the opening of the trial counsel for plaintiff stated that plaintiff had dismissed the complaint as to defendant Schamun and was only relying on the complaint as to defendants Claus. Counsel for defendants Claus then moved the court that Schamun be made a party to the action upon the ground that he was a necessary party, and over the objection of counsel for plaintiff the court made the following ruling: ''I am keeping Schamun in the case upon the record and the statement of counsel here that he deems him a necessary party under the code and while the dismissal will be filed, I am reinstating him as a defendant.'' The trial then proceeded with plaintiff and defendants Claus being represented by their respective counsel, but defendant Schamun, who had not been served and had filed no pleading, and was not represented by counsel, did not participate in the trial. No order was made that any service be made upon Schamun or that he be given an opportunity to file any pleadings, and it is apparent from the record that the case was tried by plaintiff and defendants Claus upon the issue of whether or not defendants Claus were indebted to plaintiff. While section 389 of the Code of Civil Procedure authorizes other parties to be brought in when a complete determination of the controversy cannot be had without the presence of such parties, it also provides that they must be served, and certainly contemplates that they be given an opportunity to appear and answer. Under the circumstances here present we must consider that the statement of the court that he was reinstating defendant Schamun in the case was of no effect and that the trial proceeded as a controversy between plaintiff Franke and defendants Claus.

The case was tried before the court without a jury and the court made findings, following the language of the complaint, stating that it was not true that defendants became indebted to plaintiff for labor performed and material furnished, and

that it was not true that the labor was performed and the material furnished at the special instance and request of the defendants. In its judgment the court decreed "that plaintiff take nothing by this said action and that defendants L. J. Claus, Eugene F. Claus and Hans H. Schuman have judgment of plaintiff for their costs of suit."

Plaintiff has appealed from said judgment and urges a number of grounds for reversal. Before discussing these contentions we shall give a brief summary of the evidence.

Defendants Claus were owners of real estate in the city of Vallejo. Plaintiff Franke was a general contractor engaged in the construction business. For many years the plaintiff and defendants had been friends, and during this time the plaintiff had done some building for defendants. The parties during this time had dealt on a verbal basis, plaintiff carrying the work he did for defendants on an open book account, and usually receiving compensation for his work on a cost plus 10 per cent basis.

During the year 1945 the defendants Claus were desirous of erecting buildings on property owned by them and located on Tennessee Street in Vallejo. They made a verbal, informal contract for the construction of these two buildings with plaintiff; said buildings being known as building number one and building number two. During the latter part of 1945 the defendant Schamun approached the defendants Claus and inquired about leasing building number two, which was still under construction, to be used by him as a meat market. The matter was discussed by the parties over a short period of time, whereupon it was finally decided that Schamun would take a lease on building number one rather than building number two and install a super type market therein. He also anticipated subletting a part of the building to others. During these negotiations the plaintiff continued his construction of the two buildings. As the plans and contract provided, building number one was to be open inside, without partitions or ceiling. In January, 1946, defendant Schamun obtained permission from defendants Claus to have plaintiff install some partitions in the building. Also, defendant Schamun went to defendant Louis Claus and asked about installing a ceiling in the building, as the internal appearance would be objectionable without a ceiling to cover the trusses. The subsequent installation of a ceiling in building number one is the subject matter of the litigation. When inquiring of defendant Louis Claus about the ceiling, defendant Claus testified that he told

Schamun that it was all right with him if he (Schamun) wanted to put in a ceiling, so long as he did so at his own expense and didn't damage the building. Defendant Claus testified further that Schamun later asked him if he knew what the cost would be, to which defendant Claus replied, "No," but stated that either he or Schamun could consult plaintiff about that. According to his testimony defendant Claus then told plaintiff that Schamun wanted a ceiling installed, and wanted an estimate of the cost of it. Defendant Claus testified that a week or ten days after telling this to plaintiff he met plaintiff again and stated to him, "That fellow is 'hot' to get a ceiling in there. He is after me. Now, have you got an estimate to give him?" To which plaintiff replied, "No." Defendant Claus then testified that plaintiff sat down and figured up the cost on a piece of paper and reported to him that it would be $1,700, but did not give him the estimate or any diagram or paper. Defendant Claus, according to his testimony, then relayed the estimate to defendant Schamun, and stated that nothing further was said or done about the matter for several days. Then Schamun came to defendant Claus and asked him if he could assist with the financing of the ceiling, to which defendant Claus then replied no. Defendant Claus at this time also refused to bear the cost of the ceiling itself and increase the rental to be paid by Schamun. It was discussed, however, between Schamun and Claus as to whether or not Schamun might be allowed to retain $1,290 which was advance rental to be paid under the terms of the lease, and apply same to the cost of the ceiling. It was finally settled between the two defendants Claus and Schamun, according to the Clauses' testimony, that they agreed to let Schamun retain this advance rental and apply it to the cost of the ceiling, Schamun still to bear the entire cost of the ceiling. Defendant Claus then testified that he had nothing further to do with the matter; that he did not order plaintiff to install the ceiling; that he did not direct anyone in the installation of the ceiling; that he did not order any of the materials to be incorporated into the ceiling; and that he did not pay for any part of the labor or materials which went into the installation of the ceiling.

Plaintiff's testimony was substantially the same as that of the defendant Claus, except that relating to the ceiling job, about which there is glaring conflict. Plaintiff testified that he had an oral contract with the defendant Claus to erect the two buildings on a cost plus 10 per cent basis, on an open

book account. Plaintiff then testified that defendant Claus told him one day that Schamun wanted a ceiling in the building, building number one. Plaintiff also testified that defendant Claus told him that Schamun was going to pay for the ceiling. In clarification of this he testified that defendant Claus stated Schamun was supposed to pay for the ceiling, but that it was not intimated that Schamun was going to pay him (plaintiff) for it. Several days elapsed after this conversation, and then defendant Claus approached plaintiff again about the ceiling and told him, "Bill, Hank is 'hot'; he wants an approximate estimate on that ceiling." Plaintiff testified that he then drew up a sketch of the proposed ceiling on a piece of paper, and then made out an approximate estimate on a piece of paper on which the estimate was figured to the defendant Claus. Defendant Claus denied that he was ever given this piece of paper or any written estimate; admitting only that plaintiff told him how much the estimate was. The figuring of the estimate of the ceiling was done on either the 4th or 5th of February by plaintiff. Up to this time plaintiff had discussed the ceiling only with the defendant Claus, never talking with the defendant Schamun about it at any time to this point. On the night of the 6th day of February plaintiff was stricken with a serious illness and was taken to the hospital on the 7th day of February, where he remained for seven weeks. He testified that up to the time he was stricken and taken to the hospital he was not advised as to whether or not the ceiling was to be installed. Upon being taken ill plaintiff left one Henry Minyard in charge of the work on defendants' two buildings, and made one Harry Oliver his general foreman, his job being mainly to be responsible for obtaining materials and supplies for the various jobs which were being done by plaintiff. Upon his return from the hospital, plaintiff was visited by the defendant Claus who told plaintiff to prepare his bills for the work plaintiff had done for him. Plaintiff then prepared a bill for each of the two buildings he had erected for the defendants, and also prepared a bill for the ceiling which had been installed in building number one during his stay in the hospital. The bill for the ceiling he made out in Schamun's name, or rather "Hank's Meat Market," the name of the defendant Schamun's place of business located in building number one. Plaintiff testified that he gave the bills for the two buildings to defendant Claus, and gave the bill for the ceiling to the defendant Schamun, who stated at that time, "Bill, I will see you in a

few days"; to which plaintiff replied, "All right." Plaintiff testified that he saw defendant Schamun several days later and defendant Schamun told him with reference to the ceiling bill, "There is something wrong; this is not all mine." Schamun then gave the bill back to plaintiff who in turn presented it to the defendant Claus. Defendant Claus refused to pay the bill for the ceiling, and never paid any part of it thereafter. Plaintiff testified that while he was on the way to the hospital he told Henry Minyard, who was accompanying him in the ambulance to the hospital, that "Louie [defendant Claus] is the only man that knows what has got to be done there."

Witness Minyard testified that about the time plaintiff was stricken ill he told him there might be a ceiling job involved in building number one. Minyard then testified that in plaintiff's absence he was instructed by defendant Claus as to all of the work being done on the two buildings, including the ceiling which was installed in building number one. Minyard testified that he never took instructions or directions from the defendant Schamun with reference to the ceiling. It is not clear from Minyard's testimony, however, just who gave him the instruction to start the ceiling job.

Defendant Schamun testified in general about his dealings with the defendant Claus, and then testified about the subject of the ceiling. Schamun stated that he said to defendant Claus one day, "Well, what about the ceiling, Louie?" to which Louie replied, "You want a ceiling in there?" Schamun then testified he said, "I understood when you were going to build me a building for a grocery store naturally I understood there would be ceiling, complete in other words, so I could start opening and run a grocery store and meat market." Louie then replied, "I will go see Bill Franke about it and see what he says." He also said, "I will get an estimate on what the ceiling will cost." Schamun testified that the ceiling was installed; that he never discussed it with plaintiff or any of his employees, only with the defendant Claus; that he never agreed to pay for the ceiling with Claus or anyone else; that he never asked Claus to pay for it and increase his rent; that he never asked Claus for financial help on the ceiling, and more particularly that he never asked Claus if he could retain the $1,290 advance rental under the lease so as to finance the ceiling; that he was asked for the advance rental by Claus but has never paid it to this day. Sometime later in the year when the ceiling was installed Schamun went out of business because of finan-

cial difficulties, and ultimately went into bankruptcy. Testifying about the presentation of the ceiling bill to him by plaintiff, Schamun stated that he gave the bill back and said, ''Bill, this is not right; this is not all mine.'' Explaining this, Schamun stated that he expected to be billed only for partitions which he had put in by plaintiff.

The ceiling bill was apparently carried on plaintiff's books in the name of Hank's Meat Market until 1950 at which time it was changed to Claus Sheet Metal Works.

Appellant's first contention is that respondents Claus are liable to him ''on quasi-contract or implied in fact contract for services performed at their request.'' █ He argues that the finding that the labor and materials were not furnished at the special instance and request of respondents Claus is not supported by any substantial evidence. As hereinbefore pointed out, the complaint alleged that defendants were indebted in a certain sum for labor and materials furnished at the special instance and request of defendants, and the findings followed the language of the complaint. The case was tried by appellant upon the theory that the labor and materials were supplied at the special instance and request of respondents Claus, and the court found that they were not. We are unable to agree with appellant that this finding is not supported by substantial evidence. It may be conceded that the evidence is highly conflicting, but the trial court is the judge of the weight and effect of the evidence. As this court said in *Ellis* v. *Geiger,* 105 Cal.App.2d 415, at page 416 [233 P.2d 166]:

''. . . If there is any rule that is well settled it is the oft-repeated rule that an appellate court cannot disturb a finding of the trial court if there is any substantial evidence to sustain it, and that before an appellate tribunal is justified in reversing a judgment upon the ground of insufficiency of the evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evidence and inferences in conflict therewith, it still appears that the law precludes the rendering of a judgment in favor of such prevailing party. The evidence must be construed most strongly against the losing party and every favorable inference and presumption which may fairly be deduced from the evidence should be resolved in favor of the prevailing party. The pre-

vailing party's evidence must ordinarily be accepted as true and evidence which is contradictory must be disregarded.''

We believe that the trial court could reasonably conclude from the evidence that the tenant, Schamun, wanted the ceiling, not the defendants Claus; that the defendant Claus conveyed this to the plaintiff; that the defendant Claus told the plaintiff this a second time, whereupon plaintiff drew up a sketch of the ceiling and figured an estimate, and orally relayed the estimate to defendant Claus; that the defendant Claus himself did not ever order or request that the ceiling be installed; that the defendants Claus agreed to let the tenant, Schamun, retain the $1,290 advance rental to help finance the cost of the ceiling; that the ceiling was installed with the knowledge of the defendant Claus, but without any directions, instructions, orders or purchase of materials on his part; that the tenant Schamun was to be solely responsible for the cost of the ceiling; that defendant Claus was acting merely as an intermediary between the plaintiff and the defendant Schamun insofar as the preliminary negotiations for the ceiling were concerned. It appears that under the original plans for the building a ceiling was not provided for, and that it was only because of the needs of the tenants that it was necessary that a ceiling be installed. There is no dispute as to the fact that the defendants Claus never received the advance rental due them under the lease from Schamun. Furthermore, plaintiff himself testified that the defendant Claus told him that Schamun was supposed to pay for the ceiling, but did not intimate that Schamun was to pay him (plaintiff) directly. However, when the bill was presented for the ceiling the plaintiff made it out in the name of the tenant, Hank's Meat Market, and presented the bill directly to the tenant, giving it to defendant Claus only after the tenant refused to pay. The bill was thereafter carried on the plaintiff's books in the name of the tenant until shortly before the institution of this action. Before any final arrangements had been made for the installation of the ceiling the plaintiff was taken ill and placed in a hospital. In his absence his workmen installed the ceiling. It was not brought out in the testimony who instructed the workmen to install the ceiling.

Appellant's next contention is that: ''To prevent unjust enrichment, a contractor, not a volunteer, who mistakenly believes that an owner is responsible for an improvement, where the circumstances place the owner on notice of the mistake, is entitled to quasi-contractual recovery against

the owner for the value of his labor and materials." Respondents Claus in reply assert that the issue of unjust enrichment was not before the trial court, and point out correctly that there is no allegation in the pleadings that respondents Claus were unjustly enriched or were benefited by the ceiling installed by appellant. It is apparent from the record that the issue of unjust enrichment was not presented in the trial court, and there is no evidence in the record how or to what extent, if at all, respondents Claus were benefited by the installation. So even if appellant is now entitled to raise the issue upon this appeal there is no evidence upon which a finding of unjust enrichment could be based.

Appellant also raises the issue of estoppel and contends that: "Where an owner of leased property permits a contractor to improve it, knowing the contractor does not have a definite contract rendering the owner or tenant liable and knowing the circumstances warrant the contractor's looking to the owner for payment and the contractor's failure to have a definite contract is excused by his illness, the owner is estopped to deny liability, because of the contractor's change of position." Respondents Claus in reply assert that estoppel was not in issue before the trial court and cannot now be raised for the first time on appeal. However, in the case of *Foster* v. *Fisher*, 44 Cal.App.2d 33, 37 [111 P.2d 935], it was stated:

"Although it is true that estoppel must ordinarily be pleaded, respondent's failure to do so is not fatal, for the evidence upon which the estoppel is based was admitted without objection and the defect in the pleading was therefore waived."

See, also, 10 California Jurisprudence, Estoppel, section 30. In the instant case the evidence to which appellant refers to support his assertion of estoppel was admitted without objection. Furthermore, at the close of the case the attorney for appellant argued the subject of estoppel to the court, and cited and quoted Code of Civil Procedure, section 1962(3).

The rule of estoppel in California is set forth in Code of Civil Procedure, section 1962(3), and reads as follows:

"Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

█ Generally there are four elements essential to the application of the doctrine of equitable estoppel; the party to be estopped must be apprised of the facts; he must intend

that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; the other party must be ignorant of the true state of facts; and he must rely upon the conduct to his injury. 10 California Jurisprudence, Estoppel, section 14.

It appears to be appellant's contention that respondent Louis Claus so conducted himself concerning the installation of the ceiling that he is estopped to deny that he held himself out to the plaintiff as backing the work or being responsible for it. Appellant argues that he would have never relied upon the liability of the tenant and failed to file a mechanic's lien on the work had he not felt that the owner was backing the job. There is nothing to show that the parties to be estopped, respondents Claus, were apprised of the fact that the appellant was looking to them for payment. Respondent Louis Claus testified that he merely told apellant that the tenant wanted a ceiling installed; that he conveyed the estimate made by appellant to the tenant; that he told the tenant that he could retain the advance rental due under the lease so as to help in the financing of the ceiling; that he informed the plaintiff that he was allowing the tenant to retain the advance rental for this purpose; that he took no part in ordering the installation of the ceiling, or in directing or instructing the installation of it. Even appellant by his own testimony admitted that defendant Claus told him that the tenant was to pay for the ceiling, but qualified this by stating, ''He didn't tell me that Schamun was going to pay me, because he never intimated that.'' Furthermore, when a bill was finally prepared for the ceiling it was made out by appellant in the name of the tenant and presented directly to him. Apparently only after the tenant refused to pay did appellant then take the bill to the defendant Claus and present it to him. That appears to be the first time that defendant Claus was apprised of the fact that appellant was looking to him for payment of the bill. Nor is there anything from defendant Claus' conduct which would justify a finding that he held himself out to appellant as the one liable to pay for the work to be done. Accepting the respondents' testimony, as the trial court did, and as we must, there is nothing to show that the appellant was aware of facts other than those to the effect that the tenant was to pay for the ceiling. According to the respondent's testimony, the facts were that the tenant was to bear the cost of the ceiling, and the appellant apparently relied upon this.

This is evidenced by the fact that the bill was prepared by appellant in the name of the tenant. While appellant may have relied upon a belief that respondents Claus were obligated to pay for the ceiling, and may have been injured thereby, in view of the conflict in the evidence and the finding of the court in favor of respondents, appellant's contention that respondents Claus were estopped to deny that they were liable to pay for the ceiling cannot be sustained.

Appellant next contends that the findings and judgment insofar as they do not permit him to recover against either the owners, respondents Claus, or the tenant, Schamun, are against the evidence and the law. If appellant had made service of summons upon Schamun, or if he had appeared in the action and the trial had proceeded regularly against all defendants there would be considerable merit in this contention of appellant. But, as hereinbefore pointed out, Schamun was not served and did not appear, and at the opening of the trial counsel for appellant stated that he had dismissed the complaint as to Schamun and was relying on the complaint only as to respondents Claus. While upon the motion of counsel for respondents Claus, the court stated that he would keep Schamun in the case and reinstate him as a defendant, such purported order was of no effect as no pleadings were filed on behalf of Schamun and he was not represented by counsel, nor did he participate in the trial except to testify as a witness for appellant. The record shows that the case was tried upon the issue of whether or not respondents Claus were indebted to appellant for the ceiling. Under such circumstances there could have been no judgment against Schamun, and in view of the fact that we have concluded that there is substantial evidence to support the judgment in favor of respondents Claus, there is no merit in this contention of appellant.

There is no merit in appellant's final contention that "The findings are legally insufficient, since they do not state ultimate facts or refer to pleadings stating ultimate facts." Appellant sued upon a common count and the findings were in the language of the complaint, finding the material allegations to be untrue. A similar contention was made by the appellant in the case of *Gschwend* v. *Stoll*, 104 Cal.App.2d 806 [232 P.2d 494] (hearing denied), in which case the complaint alleged two common counts for lumber sold and delivered. In holding against such contention this court said at page 807:

"It is, of course, the law that a trial court commits error when it does not find upon all material issues, but it is also the law that findings should be on ultimate facts, and it is unnecessary to state the probative or evidentiary facts, for a finding of ultimate facts includes a finding of all of the probative necessary to sustain it. Since ultimate facts are required to be pleaded, it is only necessary in order to determine the sufficiency of a finding of fact to ascertain what statement of that fact is required in a pleading. (24 Cal.Jur., § 203, p. 968.) See, also, *Nicolds* v. *Storch,* 67 Cal.App.2d 8 [153 P.2d 561]; *Hitchcock* v. *Lovelace,* 47 Cal.App.2d 818, 830 [119 P.2d 151]; *Pellegrino* v. *Los Angeles Transit Lines,* 79 Cal.App.2d 40, 42 [179 P.2d 39].

"The findings in the instant case were as broad as the pleadings, and when the trial court found that respondents sold and delivered to appellants logs in the agreed and reasonable sum of $7,258.05, and that $5,949.24 had been paid on account, this necessarily included a finding that the price had not been reduced from $24 to $21. In *Pacific States S. & L. Co.* v. *Perez,* 51 Cal.App.2d 84 [124 P.2d 184], the court said at page 94: 'In response to the claim that there is no finding on the issues of fraud and confiscation, it is sufficient to call attention to the finding of the lower court that the claims of defendants to the property are without right and that they have no interest in the property. Where an omitted finding must be inferred from a consideration of the findings actually made, an appellate court will recognize the necessary inference and consider the finding in question as having in effect been made. (*Reiniger* v. *Hassell,* 216 Cal. 209, 211 [13 P.2d 737]; *Publishers D. Serv.* v. *Southern Cal. S. B. Depos.,* 14 Cal.App.2d 448 [58 P.2d 401].)' "

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.