[Civ. No. 31871. Second Dist., Dist. Five. Jan. 18, 1968.]

PACIFIC INDEMNITY COMPANY et al., Petitioners, v. WORKMEN'S COMPENSATION APPEALS BOARD, DOROTHY MAE BROWN et al., Respondents.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

36

Clopton & Penny and Robert C. Kunz for Petitioners.

Everett A. Corten and Edward A. Sarkisian for Respondents.

STEPHENS, J.—This cause arises by way of petition for writ of review to inquire into and determine the lawfulness of an opinion and order denying reconsideration of order awarding workmen's compensation payment under an insurance policy issued by Pacific Indemnity Insurance Company (here-

inafter called Pacific). Labor Code section 5950 provides for such review.

## Facts

In March 1964, one Nathanson sold certain real property known as the Fountain Lonae Apartments (hereinafter called Fountain Lonae) to Bernard Aptaker, dba Aptaker Properties and/or Aztec Holdings, Inc., a California corporation (hereinafter referred to as Aptaker). As part of the sale price Nathanson took the buyer's note, secured by a trust deed on the property junior to an existing encumbrance. Later that year, Aptaker sold the Fountain Lonae to the Mitchells, taking in turn purchasers' note secured by a third trust deed.

In March 1965, Mrs. Brown, the claimant in the proceedings here involved, commenced her employment at the Fountain Lonae. At that time, a Mrs. Taylor was the manager, and the Mitchells were the owners of the apartment house. In or about May 1965, Nathanson commenced a foreclosure action under the second deed of trust and on or about June 11, 1965, Messrs. Stoll and Fox were appointed coreceivers. This receivership will hereinafter be referred to as the first receivership. The first receivership continued until September 15, 1965, at which time Aptaker again became the owner of Fountain Lonae, the Mitchells' interest apparently having been foreclosed and his third trust deed merged into Aptaker's title. By some train of events, not made entirely clear by the record, the Mitchells were severed from the title and Nathanson maintained his second trust deed.

During the period of the first receivership, and specifically on August 1, 1965, Aptaker obtained a policy of workmen's compensation insurance from Pacific. The policy number was PEC 48920, and covered specifically listed properties belonging to Aptaker for a period of one year. The Fountain Lonae was not included in the list of properties covered by the policy as first issued. There is no question but that the policy insured multiple ventures of Aptaker, some in his own name, others in the fictitious name, and others in the corporate designation. After the issuance of the policy, an "Extension Schedule Endorsement No. 2" issued and was attached to the policy. This endorsement extended the coverage of the policy to apartment houses and buildings not otherwise classified, and was retroactive in effect to August 1, 1965. Still later, another endorsement, "No. 5," was issued and attached to

the policy. Endorsement No. 5 added "Los Angeles listed locations and elsewhere in the State of California." This endorsement No. 5 was retroactive in effect to August 16, 1965.

There is no question but that policy number PEC-48920 covered Mrs. Brown and all other employees at Fountain Lonae during the operation thereof by Aptaker commencing on September 15, 1965.[1]

In November 1965, Nathanson obtained the appointment of Messrs. Stoll and Fox as coreceivers through a new foreclosure action, number C 872061. This is the "second receivership" of the Fountain Lonae, and this receivership's existence was from November 5, 1965, to March 14, 1966. On March 14, 1966, the court terminated the receivers' possession of the property, ordered them to turn it over to Nathanson and to account. At the time of the proceedings here reviewed, they had not accounted.

During the second receivership Mrs. Brown was an employee at Fountain Lonae. Throughout this period, Mrs. Brown (as were all other employees at Fountain Lonae) was paid by Stoll and Fox, the coreceivers. The coreceivers did not apply for workmen's compensation insurance in their own right during either receivership. The record establishes that during the second receivership the coreceivers appointed managers of the Fountain Lonae other than those Aptaker had employed.

On January 11, 1966, Mrs. Brown sustained an injury in the course of her employment, occasioned by the collapse of wooden stairs on the Fountain Lonae premises.[2] Mrs. Brown filed an application for industrial injuries with the Workmen's Compensation Appeals Board on April 11, 1966. It is as a result of the findings and award and order of the referee, adopted by the appeals board on this application, that the cause is before us for review.

The referee found that Mrs. Brown was an employee of Stoll and Fox, coreceivers, at the time of injury; that Aptaker was neither a necessary nor proper party to the petition of applicant, and that he is entitled to be dismissed and dis-

[1]Mrs. Brown was an employee of the Mitchells, and in August 1965 took a vacation. She returned to her employment at Fountain Lonae in September 1965.

[2]So far as we are here concerned, there is no issue as to the injury or reasonableness of the award, the question being solely whether the Pacific policy covers under the factual circumstances.

charged. With this we agree.[3] Further, the referee found as a fact that "at said time of injury, workmen's compensation coverage was afforded to said employer by policy No. PEC 48920 issued by defendant Pacific Indemnity Company, a corporation, and said defendant is estopped from denying that such coverage was in full force and effect at said time." The Workmen's Compensation Appeals Board adopted the finding of the referee and ordered that the petition for reconsideration be denied. With this we cannot agree.

We are presented with two questions posed by petitioner Pacific: "(a) Did the appeals board exceed its jurisdiction in holding that the policy of insurance issued to Bernard Aptaker . . . afforded coverage to Peter R. Stoll and Gerson Fox, coreceivers of the Fountain Lonae Apartments at the time the employee sustained her injury" and "(b) Were the four elements essential to equitable estoppel present to support the findings of the appeals board that petitioner was estopped to deny workmen's compensation coverage under the above policy to the co-receivers, Peter R. Stoll and Gerson Fox?"

The answer to question (a) requires an analysis of the policy involved.

As we have noted, the policy in question extended the benefit of coverage to employees at Fountain Lonae during all such time as Aptaker was the employer. At no time pertinent to this case was the policy terminated unless such termination was by virtue of the material change in the identity of the insured employer.[4]

We have been unable to find any California court deter-

[3] The determinative feature in ascertaining whether the employer-employee relationship exists in any given case is the degree of control exercised by the alleged employer over the alleged employee. As was said in *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, 417 [156 P. 491, Ann.Cas. 1917E 390]: " ' 'The real test by which to determine whether a person is acting as the servant of another is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control and was liable to be discharged by him for disobedience of orders or misconduct.' " (See also, *Department of Natural Resources* v. *Industrial Acc. Com.,* 216 Cal. 434, 438-439 [14 P.2d 746].) That the receivers were not in the relationship of agents for Aptaker, see *United States Overseas Airlines* v. *County of Alameda* (1965) 235 Cal. App.2d 348, 353 [45 Cal.Rptr. 337], citing 42 Cal.Jur.2d, § 2, pp. 334-335.

[4] "In order for liability to arise under the Workmen's Compensation Act a relationship of employer-employee must be established (Cal. Const., art. XX, § 21)." (30 Ops. Cal. Atty. Gen., pp. 281, 282.)

Insurance Code section 302 provides: "A change of interest in one or more of several distinct subjects, separately insured by one policy, does not avoid the insurance as to the others."

mination wherein a receiver has been held liable as an employer within the Workmen's Compensation Act. Labor Code section 3300 defines "employer." Subdivision (c) includes "Every person including any public service corporation, which has any natural person in service."

In *Freeman* v. *Lynch* (1924) 12 I.A.C. 84, the commission held that one hired by the agents of a receiver of a bankrupt business was in the employ of the receiver. 1 Hanna, The Law of Employee Injuries and Workmen's Compensation, page 238, states: "A receiver in equity is liable for the payment of compensation for injuries occurring during his incumbency." The case of *Burla* v. *MacMullen*, 18 I.A.C. 79 held: "[t]hat the liability for compensation should be awarded to applicant against the defendant receiver in equity." (Annot. 111 A.L.R. 328.) Code of Civil Procedure, section 568 provides: "The receiver has, under the control of the court, power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the court may authorize."

 A receiver in a foreclosure action may be an employer in the carrying out of his duties, and in such capacity he is not an agent of any of the parties to the action. A receiver is an officer of the court and subject to orders of court, takes custody of property subject to all liens and equities and claims of creditors and not as an assignee. (*H. D. Roosen Co.* v. *Pacific Radio Publishing Co.*, 123 Cal.App. 525 [11 P.2d 873]; *United States Overseas Airlines* v. *County of Alameda*, 235 Cal.App.2d 348 [45 Cal.Rptr. 337].) As stated in *Ward* v. *Commissioner of Int. Rev.*, 224 F.2d 547 at p. 550: "The receiver in California is an officer of the court whose possession of property is that of the court for the benefit of all persons who may show themselves to be entitled to it. (*Adams* v. *Haskell* (1856) 6 Cal. 113; *Pacific Ry. Co.* v. *Wade* (1891) 91 Cal. 449, 454-456 [27 P. 768, 13 L.R.A. 754]; *Tapscott* v. *Lyon* (1894) 103 Cal. 297 [37 P. 225]; *Highland Securities Co.* v. *Superior Court* (1931) 119 Cal.App. 107, 112-114 [6 P.2d 116]; *Chiesur* v. *Superior Court* (1946) 76 Cal.App.2d 198, 199, 200-201 [172 P.2d 763].)"[5]

___

[5]"A receiver is a ministerial officer, agent, the creature, hand, or arm of, and a temporary occupant and caretaker of the property for, the court. He represents the court appointing him, and he is the medium through which the court acts." (45 Am.Jur., Receivers, § 127, pp. 106-07; cf. 42 Cal.Jur.2d, Receivers, § 74, p. 378.)

■ In 1 Clark, Receivers, 580 et seq. it is stated that in the case of contracts terminable at will, a receivership terminates the old relations between the insolvent employer and the employee because of the inability of the insolvent employer to perform. While the cited authority does not so state, we conceive no good reason why the same rule should not apply in a case not involving insolvency.

■ When the receiver undertakes to carry on the business of apartment operation, he becomes liable, in his capacity as receiver, to all persons employed by him in the conduct of the apartment house operation as their employer. (*First Nat. Trust & Sav. Bank of San Diego* v. *Industrial Acc. Com.* (1931) 17 I.A.C. 309, 311.[6]

■ Thus, we see that in the case at hand, Stoll and Fox were the coreceivers in possession of the apartment at the time of the injury. The persons engaged or retained by the coreceivers to assist them were the agents or employees of the receivership, and not of the owner of the property of which they were the receivers, nor of the court. Such persons had direct access to the court for settlement of their grievances and, upon petition to the court, could obtain leave to sue the receivership by naming the receiver. (*Chiesur* v. *Superior Court* (1946) 76 Cal.App.2d 198, 199, 200-201 [172 P.2d 763].) By the possession of the receivers, Aptaker was effectively dispossessed, and any interest retained by him was

---

[6]In *Kirk* v. *Kirk*, 243 Cal.App.2d 580, 583 [52 Cal.Rptr. 725], it is held that liability for payment to the State of California (Department of Employment) for unemployment contributions is that of the receivership where such liability accrued during the receivership and constitutes an expense of administration, and not that of the receiver personally. Likewise, the responsibility to maintain workmen's compensation insurance was upon the coreceivers as an incident of the employer-employee relationship existent by their management and operation of the Fountain Lonae. "A judgment against a receiver should be against him in his official capacity, leaving the matter of its enforcement to be determined by the court having jurisdiction of the receivership." (42 Cal.Jur.2d, Receivers, § 93, p. 388; see also, *Freeman* v. *Lynch, supra*; *Bartlett* v. *Cicero Light H. & P. Co.*, 177 Ill. 68 [52 N.E. 339, 340, 69 Am.St. Rep. 206].) We only refer to the liability to Mrs. Brown. We say nothing about the nature of any possible liability the receivers may have to persons interested in the receivership property for any negligent failure of the receivers to procure workmen's compensation insurance.

subservient to that of the receivership and subject to adjudication within that action.[7]

Thus, any theory of continued employee-employer relationship by a corporation under receivership management, however supportable in certain cases, does not apply to foreclosure-type receiverships. The cases controlling legal principles of receivership must be carefully considered, keeping in mind the varying types (and purposes) of receiverships. The referee applied the principles in conformity with the law as we have expressed it, and determined correctly that as of the time of Mrs. Brown's injury, Aptaker was not in an employee-employer relationship with her. His dismissal from the action was quite proper.[8]

Unless the principles of estoppel then apply, the workmen's compensation insurer, Pacific, cannot be held liable here, for its policy insured only the employer Aptaker and his entities.

■ To impose an estoppel upon Pacific there must be evidence supporting the elements of estoppel as set forth in Evidence Code section 623: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." As stated in *Franke* v. *Claus* (1953) 121 Cal.App.2d 777, at p. 786-787 [264 P.2d 108]: "[T]here are four elements essential to the application of the doctrine of equitable estoppel: the party to be estopped must be apprised of the facts; he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; the other party must be ignorant of the true state of facts; and he must rely upon the conduct to his injury. (10 California Jurisprudence, Estoppel, section 14.)"

---

[7]We note that receivers in the type of case before us must be distinguished from those involved in administering the total business of a going corporation. Stoll and Fox were not receivers of the total business activity of Aptaker and his entities, but only of one interest in real property. (45 Am.Jur., Receivers, § 137, p. 117, §§ 143, 145, pp. 121-22.)

[8]*Pacific Indem. Co.* v. *Industrial Acc. Com.*, 136 Cal.App. 158 at p. 161 [28 P.2d 397] states: "The Industrial Accident Commission has held in *Disberg* v. *Karrer* and *Western Indem. Co.*, 5 I.A.C. 30, that a policy covering a business conducted by a known individual does not cover another individual who takes over the business without an endorsement of the policy, as required by its terms. To the same effect was *State Compensation Ins. Fund* v. *Bredemann*, 11 I.A.C. 30."

■ There is no evidence in the record to substantiate a finding that Pacific was aware of either foreclosure proceeding on the Fountain Lonae property. The policy in question became operative as to Fountain Lonae under endorsement No. 2 (effective retroactively to August 1, 1965) and endorsement No. 5 (effective retroactively to August 16, 1965) but it was not applicable to that property until Aptaker "took over" on September 15, 1965. To establish estoppel, the referee apparently relied to a considerable extent on Pacific's exhibit Z-1, and particularly as it relates to a comprehensive multiple peril policy issued by Pacific to Aptaker. It is this comprehensive policy (MP-15314) and not the workmen's compensation policy (PEC-48920) to which the referee refers in his memorandum decision when he says: "The records of the agent [which are a part of the voluminous Appeals Board Exhibit Z-1] show that Mr. Aptaker was known, as of November 30, 1965, not to have any further interest in the property. . . . It is apparent, however, that the agency cancelled the comprehensive liability policy on the property by the same carrier (Pacific) as of November 30, 1965. When the agent did not take steps at that time to cancel the Workmen's Compensation policy, it can only be concluded that the agent intended that the Workmen's Compensation policy continue in effect as to any employment operations being carried on at the subject real property. Thus, the basis for estoppel is afforded."

The letter of December 14, 1965, enclosing notices of cancellation of the comprehensive liability policy effective November 30, 1965, is from the agency, Bayly, Martin and Fay. This agent, and no other, is shown as agent for the Aptaker interests, no matter which policy of insurance may be referred to. (*Truck Ins. Exchange* v. *Industrial Acc. Com.*, 36 Cal.2d 646, 651 [226 P.2d 583].)

Mr. Stoll testified (questions by attorney Kunz): "Q. At the time that you, that the order appointing receivers was filed, which would be on/about December 1, 1965, did you inquire as to whether there was any insurance of any nature on the property or on the employees? A. Yes, I did. Q. Did you do anything with regard to the liability insurance on the property? A. Yes I did. I took out liability insurance because I was informed it had lapsed. Q. And what did you do with regard to the workmen's compensation policy? A. I was advised that there was a policy in force and effect, and that that policy was not cancelled and would continue until, I

believe, August 1966. It was a one-year policy from August 1965 to August 1966. I contacted Judge — Q. Just a moment! You said there was a policy in force and effect? A. Yes, there was. Q. And who gave you this information? A. Since the last hearing, I have tried to recall. I don't recall if I found out myself or if I discussed it with Mr. Aptaker's attorney, Mr. Hersher (phonetic). I cannot recall at this time, but I do recall checking to see if there was workmen's compensation insurance.

"THE COURT: Your inquiry on that point was with Mr. Aptaker or Mr. Aptaker's representative?

"A. I believe it was, Your Honor. I don't recall. I do recall checking. I recall talking with Mr. Fox. There was a question in my mind at that time as to whether to cancel it and start a new policy. . . .

" . . . . . . . . . . . .

"Q. [BY THE COURT] : My question earlier, Mr. Stoll in connection with the advice sought or obtained, you mentioned the possibility that the advice was from Mr. Aptaker or his representative, and you now have indicated you possibly consulted Judge Collins about the insurance. Did you in any event, aside from these people, consult the insurance company or any person purporting to act as an agent for the insurance carrier? A. Are you talking about Pacific Indemnity? Q. Yes. A. No, I did not. I definitely did not contact Mr. Aptaker. I didn't contact Mr. Aptaker. It may have been Mr. Hersher, his attorney. I don't recall where I checked that there was insurance in effect, but I know there was insurance in effect at that time. Q. Could you have contacted an insurance agent for Mr. Aptaker? A. It's possible. I think that's where it might have come from. Q. This is important, Mr. Stoll, as you may realize. . . .—it is vital— . . . A. Well, the liability insurance, Your Honor, as I said, I was informed by a private agent, a Mr. Robert A. Crigler of Crigler Insurance Agency, as to the workmen's compensation.[9] I may have got the information from him. I can't recall at this time, but I knew that there was workmen's compensation insurance in effect at that time. I guess I may digress, let me say, that for my direct testimony.

" . . . . . . . . . . . .

"Q. [BY MR. KUNZ] : Just a moment, Your Honor. After

---

9The record indicates that the Crigler Agency was the receivers' agency but does not indicate what insurance company it represented.

you got the information that there was such a policy of workmen's compensation insurance in force, did you learn of the name of the company at that time? A. I don't recall. I don't have any records indicating it. I just didn't take any insurance out after that. I don't recall. Q. You did not call the insurance carrier; that is, Pacific Indemnity Company, which was the workmen's compensation carrier at that time prior to your receivership, that you had been appointed as receivers for this particular property? A. Not that I recall, I don't think so.''

There followed a statement by Mr. Stoll as to the first receivership, that from May 1965 to September 15, 1965, Mr. Stoll recalled the termination of that receivership as August or early September. The referee expressed himself as concerned as to whether, during that period, there had been communication between Stoll and Pacific relative to insurance. Mr. Stoll recalled that there had been. Then the referee asked: ''Since you were apparently still receivers as of August 1, 1965, when this policy was taken out, it might be important for us to have the detail as to what, if any, transactions took place between you, as receiver, and Pacific Indemnity Company? A. None at that time. There were a good deal of discussions. Q. Then your receiverships must have terminated before August 1, 1965? A. It might have. I will submit the date.'' The referee then expressed himself as interested in that period, stating: ''Obviously, if there were some transactions in 1965 which bear on knowledge and the relationship between the receivers at that time and the workmen's compensation insurance carrier, it might be a very important factor on the issue of estoppel.'' After some further testimony, not here particularly germane, the referee asked: ''More important, do you recall, Mr. Stoll, whether you had any transactions whatsoever in 1965 with Pacific Indemnity Company, the workmen's compensation carrier, or with an agent of that company?'' In answer, Mr. Stoll said: ''I don't believe I did, Your Honor.''

· The record then is clear that the only discussion had by the receivers with any insurance agent was with a Mr. Crigler of the Crigler Agency. The exhibit Z-1 establishes the fact that the only insurance agency involved with either policy (MP-15314 or PEC-48920) was Bayly, Martin and Fay. There having been no direct communication between Pacific and the receivers, there could be no knowledge imputable to Pacific through anything said or done by Mr. Crigler.

It would appear that the referee assumed that there was effective workmen's compensation insurance through PEC-48920 during at least a part of the period of the first receivership. This is based upon the conclusion that the Fountain Lonae property was covered by the provisions of coverage afforded under endorsements No. 2 and No. 5. We must agree that this would have been the case had Aptaker been in control of the property at the time of issuance of these two endorsements, one effective August 1, and the other August 16, both issued during August 1965. The policy itself precludes any such conclusion, however, for it is limited to those properties then operated by Aptaker, and Aptaker did not obtain the Fountain Lonae until September 15, 1965.[10]

Of course, once the possession and operation were in Aptaker (September 15, 1965), the coverage of PEC-48920 was automatic under the provisions of the two endorsements. Likewise, automatically, there was no coverage under the policy when Aptaker had no interest in, had no possession, or right of operation of the Fountain Lonae, and no cancellation of coverage was necessary. Section 305 of the Insurance Code provides: "The mere transfer of subject matter insured does not transfer the insurance, but suspends it until the same person becomes the owner of both the insurance and the subject matter insured."

Assuming, *arguendo*, that by virtue of notice to cancel the comprehensive policy, Pacific had notice of termination of Aptaker's interest, possession, and operation of the Fountain Lonae, such notice would thereby terminate coverage likewise under PEC-48920; a specific reference to said property never having been noted by specific endorsement on the policy, it is unreasonable to assume a duty of Pacific to note a cancellation of coverage under a continuing policy. This is not the case under the comprehensive policy, however. The comprehensive policy was specific coverage as to the Fountain Lonae as issued to Aptaker under order dated September 22, 1965, effective by endorsement No. 32 as of September 20, 1965, and by endorsement No. 42, cancelled for coverage as of November 30, 1965, by communication from agent Bayly, Martin and Fay to Pacific dated December 14, 1965.

In addition to the assertion of knowledge had by Pacific,

---

[10]From the time of sale of said property by Aptaker to Mitchells until the court order of September 15, 1965, either the Mitchells or the receivers possessed and operated the apartment.

that Aptaker had no interest in the property and the fact that Pacific gave no notice of noncoverage as to the Fountain Lonae,[11] the other factor relied upon to establish estoppel is constructive notice of the receivership through the court action having been filed in a court of record. We do not conclude that such fact would give constructive notice to Pacific when they were not a party to the action. This misconception by the receivers and the referee does not affect the problem before us, however, for actual notice was possessed by Pacific through the cancellation notice of the comprehensive policy that Aptaker had no interest in the property. Who possessed the property and operated it was of no concern to Pacific, which owed an insurer's duty solely to its client, Aptaker.

As to the four elements of estoppel, we find only one of them to be existent under the evidence here. Assuming the most favorable aspects of the case on behalf of the receivers, the most that can be said of element (1)[12] is that Pacific had knowledge, at a time prior to the injury involved, that Aptaker (and his enterprises) had no interest in the property. As to element (2)[13] that it gave no notice of cancellation of policy coverage to the receivers. The only evidence is that the receivers communicated about workmen's compensation insurance with an insurance agent unrelated to the policies involved; that at no time did the receivers communicate with Pacific (or the agent who had represented Aptaker); that at no time did the receivers pay, nor did Pacific receive, any money for workmen's compensation insurance coverage after November 30, 1965; that the receivers at no time knew the identity of the insurer, or the agent for Aptaker. As to element (3)[14] the record amply discloses that the receivers did not know the true facts. As to element (4)[15] the record fails to disclose any conduct or representation on the part of Pacific upon which the receivers could rely. The record discloses no act by the receivers upon which Pacific or its agent

---

[11]Of course, had Pacific given any such notice to anyone, it would have been to Aptaker and not to the receivers.

[12](1) That the party to be estopped must be apprised of the facts.

[13]That the party to be estopped must intend his conduct will be acted upon, or act in such a manner that the party asserting estoppel could reasonably believe that he intended his conduct to be acted upon.

[14]The party asserting the estoppel must be ignorant of the true state of facts.

[15]He (the receiver) must rely upon the conduct (of Pacific) to his injury.

could act to extend coverage to the operation by the receivers. The only "acts" by the receivers were their communication with persons totally unrelated to Pacific, *i.e.*, a different agent and the trial judge, and to draw an untenable legal conclusion to the effect that the receivers were mere agents of Aptaker. Because the receivers obtained information which proved faulty or drew erroneous legal conclusions based upon facts they believed to be true cannot supply this element, particularly when there is not the slightest hint that Pacific contributed to their misconceived belief.

The question, whether Pacific can be estopped from denying coverage under the facts of this case, must be answered in the negative. Since Aptaker (or his enterprises) had no employment capacity in the Fountain Lonae and had no employee-employer relationship with Mrs. Brown at the time of her injury, Pacific was not a carrier of workmen's compensation insurance for employers at the Fountain Lonae as of the date of injury. Since the theory of estoppel does not apply under the facts of this case, Pacific has extended no coverage to or for the receivers Stoll and Fox.

The award is annulled.

Kaus, P. J., and McCoy, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.