[Civ. No. 7977. Third Dist. Nov. 30, 1951.]

L. W. HOSFORD, Respondent, v. CLYDE W. HENRY et al., Appellants.

C. A. Degnan and Winston A. Langlois for Appellants.

Hauerken, St. Clair & Viadro and William W. Speer for Respondent.

VAN DYKE, J.—The action here under review was brought by plaintiff-respondent, Hosford, against defendant-appellant, Henry, to obtain reformation of a deed of trust securing a promissory note given by appellant to respondent and to foreclose the deed of trust as reformed. Appellant for some time had been engaged in the business of operating a public utility furnishing electric light and power and a public utility furnishing water to the town of Klamath and vicinity in Del Norte County. His enterprises had been franchised by the Public Utilities Commission. On March 13, 1948, he borrowed

from respondent the sum of $36,000, executing to respondent a promissory note in that amount, together with the deed of trust in question. Prior thereto appellant had applied to the Public Utilities Commission for an order authorizing him to borrow said sum from respondent and to execute the note and deed of trust. To this application he appended copies of the proposed note and deed of trust and throughout the application referred to the copies for particulars concerning the terms thereof and for a description of the property to be encumbered. Therein there was described by metes and bounds two small parcels of real property and nothing more. Upon these parcels was situated the generating plant which produced the electricity for the electric utility business. Neither the wells which produced the water for the water utility business nor the pumps, pipe lines or other appurtenances of the water system were situated upon the real property so described. Much of the operating property of the electric utility, such as poles, service lines, transformers, meters and the like were also located without the boundaries of these parcels. Attached to the application there appeared a statement of the assets and liabilities of the Klamath Water Light and Power Company, under which designation appellant operated both utility businesses. This statement, among assets, listed "Machinery & Equipment $80,996.99, Land [the two small parcels] $1,471.00, Autos & Trucks $1,410.02, Inventory $1,265.88." The statement showed the net worth of the Klamath Water Light and Power Company to be approximately $69,000. Responsive to the application, the commission granted permission for appellant to execute the note and the deed of trust, both instruments "to be in, or substantially in, the same form as the note and deed of trust on file in this application." It was ordered that appellant use the proceeds of the loan to pay certain outstanding indebtedness and to pay in part the cost of an electric service line proposed to be constructed jointly by appellant and the California-Oregon Power Company in order to bring electric current to Klamath from that company's lines.

In his complaint plaintiff-respondent alleged it was the intention of the parties when the loan was made and the instruments were executed that the deed of trust should cover all the property used in operating both utilities, whether located on the described real property or not. The plaintiff-respondent prayed that he have judgment for principal, interest, attorneys' fees as provided in the note and deed of trust and his costs, and that these sums be declared a lien upon all of the

property described in the deed of trust and the additional property sought to be included therein by reformation; and that the lien be foreclosed. The court found the allegations as to what the parties intended the deed of trust to cover to be true. It decreed that the deed of trust be reformed and foreclosed.

It appeared that after the action was begun and by permission of the commission and agreement of the parties to the action, the rights of way used in connection with the operation of the electric utility, together with the power poles, power lines and incidental equipment, were sold to California-Oregon Power Company for $30,000, $24,000 of which was paid to respondent, so that the amount adjudged to be due him was $12,000, plus over $2,000 accrued interest. The court by its judgment decreed that respondent recover attorneys' fees fixed at $5,100.

Appellant moved for a new trial. The trial court made an order denying the same and at the same time ordered that the attorneys' fees as adjudged be reduced to the sum of $4,200. These orders were made more than 60 days after the notice of intention to move for a new trial was filed.

It appeared in the evidence that before beginning action herein respondent requested the commission to authorize appellant to include in the deed of trust the aforesaid property not described therein. Respondent further asked of the commission, if appellant should decline so to do after being authorized, that the commission authorize respondent to prosecute an action against appellant in a court of competent jurisdiction for reformation of the deed of trust and for foreclosure as reformed.

The commission held a hearing upon respondent's application and thereafter rendered an opinion noting that the testimony was in conflict as to the intention of the parties with respect to the scope of the deed of trust. The commission declared it had no authority to direct the appellant to reform the deed of trust as requested by the respondent; but that if a court of competent jurisdiction ordered a reformation of the deed of trust the commission would then consider, upon the filing of an appropriate proceeding, what action it would take in regard thereto.

Appellant first contends that there is insufficient evidence to support the trial court's finding that the deed of trust should be reformed. Except as reformation here may be

limited and controlled by the provisions of the Public Utilities Act, this contention cannot be sustained. Respondent testified that appellant offered to give as security for the loan "his entire operation in Klamath" including "the property, buildings, machinery and all transmission lines, poles, transformers, water department, wells, pumps, motors, and all transmission lines and all other assets he had in the County of Del Norte"; that he was "perfectly willing to put up all of his assets including the property, the plant and machinery, transmission lines, transformers, and everything else for security for the money." When later respondent advised appellant that his attorneys had recommended to him that he refuse to make the loan because appellant's credit was not satisfactory, appellant again described the security which he was prepared to give as "all of his property, buildings, transmission lines, transformers, poles, franchise for both water and electricity." He then exhibited to respondent the promissory note he proposed to use and the application he had filed with the Public Utilities Commission to obtain its order permitting him to borrow the money and give the security. The application was discussed in detail. The two men examined the commission's order which recited that the deed of trust would be a lien on applicant's property situated "in Klamath and vicinity." Appellant stated to respondent that this order of the commission "covered everything he had" and that there was no reservation as to machinery and that even some new poles were covered. Appellant urged that he needed the money that morning in order to complete certain deals. At the close of this conversation respondent gave appellant a check for $36,000 and received from appellant the executed promissory note and deed of trust. Respondent said he did not check the deed of trust because he would not have known whether it was right or wrong by reading it, but he took it for granted that it was correct and relied in part upon the fact that the commission had acted in the matter, believing that anything done under its supervision would be correctly done. Respondent believed that the security instrument carried out the intentions of himself and appellant. As to appellant, who did not testify at the trial, being personally absent therefrom although represented by counsel, it is apparent that the trial court could conclude from the testimony of respondent that either appellant also believed with respondent that the security instrument was adequate to do what the parties intended or else that, knowing it to be quite defective in the property therein described as security for the debt, he wilfully deceived and defrauded

respondent into making the loan. The court could presume that appellant was not acting fraudulently and from the testimony of respondent could infer by reason of the statements appellant made to respondent at that time that appellant, even as respondent, mistakenly believed the security instrument carried out the intentions of the parties, which intentions were as claimed and testified to by respondent with respect to the amount of security that was to be placed behind the loan. The facts warranting reformation were therefore presented to the trial court.

". . . The purpose of reformation is. to effectuate the common intention of both parties which was incorrectly reduced to writing. To obtain the benefit of this statute, it is necessary that the parties shall have had a complete mutual understanding of all the essential terms of their bargain; if no agreement was reached, there would be no standard to which the writing could be reformed." (*Bailard* v. *Marden,* 36 Cal. 2d 703, 708 [227 P.2d 10].)

"Except as stated in Sections 506 and 509-511, where both parties have an identical intention as to the terms to be imposed in a proposed written conveyance, assignment, contract or discharge, and a writing executed by them is materially at variance with that intention, either party can get a decree that the writing shall be reformed so that it shall express the intention of the parties, if innocent third parties will not be unfairly affected thereby." (Restatement of the Law of Contracts, § 504.)

After respondent had testified to the matters hereinabove referred to, it appeared, as might have been expected, that he could not describe all of the items of property that would come under the designation of operative property of the two utilities. It was then suggested by counsel for the appellants that an inventory be made which would describe the items of operative property which the court might find ought to have been described in the deed of trust. After considerable discussion the case was continued, the court having announced that it would reform the deed of trust and foreclose it so as to include therein all the operative property. The description of property to be included· in the reformed instrument was to be ascertained after an inventory was taken. The court appointed a receiver, and ordered that this receiver prepare an inventory of all property, both real and personal, described in the complaint as having been intended to be included in the security instrument, the inventory to indicate all machinery, equip-

ment and other personal property: a. Located "in the plant" on March 13, 1948, the actual date of the execution of the note and deed of trust; b. Located "in the plant" at the date of the receivership order; c. Removed from "the plant" between March 13, 1948 and January 16, 1950; and d. Removed from "the plant" subsequent to said January 16th. The receiver was directed to exclude from the inventory the electric distribution system previously sold to California-Oregon Power Company. When the trial was resumed the inventory as made up by the receiver was on hand. It was received in evidence but no one testified it was correct. At that time appellant, testifying therefrom, stated that numerous items were included in the inventory which were not part of the operative property of either utility when the deed of trust was executed, but had been brought to Klamath thereafter, that some of the items listed were worn out and had been disposed of, that some of the items had never been part of the operative property of either utility but were merely stored upon the utility premises or although located in other areas and never used were nevertheless included by the receiver in the inventory. The receiver did not testify as to what information he had acted on in inventorying the various items therein described. From this record it must be said with regard to many items contained in the inventory that there is nothing to conflict with the testimony of appellant that these items were not and never had been a part of the operating properties of the utilities and should therefore have been excluded. ■ Receivers are officers of the court appointing them, but they possess no judicial powers. ■ The court could not and in fact did not purport to delegate to the receiver the court's own fact-finding powers. ■ The burden was upon respondent to prove his right to have a lien upon each item of property which he claimed ought to have been included in the deed of trust and in the absence of such evidence as to any particular item it could not be included.

■ Respondent argues that appellant cannot be heard to complain of the insufficiency of evidence as to the items he says should not have been included in the deed of trust because it was appellant who would have best been able to testify on such matters and he chose not to be present, raising thus a presumption that his testimony would have been in favor of respondent. The rule that failure of a party to call an available witness raises a presumption that the testimony of such witness would have been adverse to the party failing to so

call him has no application here. It was still the burden of respondent to prove his case and appellant was under no duty to appear as a witness for his adversary unless subpoenaed. Appellant did testify at the continued hearing on the matter of the inventory and his testimony as to the items covered by it stands without conflict. Even if disbelieved, as suggested by respondent, there is still no evidence that the receiver correctly inventoried the operative property. █ Respondent further argues that because appellant stipulated that the inventory might be taken he thereby waived any objection thereto. This argument is not sound. Respondent refers in support thereof to *Lyle* v. *Lyle,* 53 Cal.App.2d 552 [127 P.2d 1006]. In that case the trial court in a domestic relations case delegated to an assistant the duty of investigating conditions surrounding children whose custody was involved and purported to base its order upon the report of such assistant. It was held that because the defendant in that action had by acquiescing in such conduct led the court into the error of delegating its fact-finding powers to such assistant he could not thereafter complain of the error which he had invited. No such situation obtains here. True, appellant's counsel, after the court had indicated its intention of reforming the deed of trust so as to include all items of operating property, suggested that an inventory be taken so that it could be determined what items would fall within the classification of operative property. There was no waiver of any right to object when the inventory was taken that items had been wrongfully included therein. There is nothing in the record to warrant applying the rule of invited error. The matter was made the subject of motion for new trial and the court refused to change its finding. Also appellant's objections relied on here were presented to the trial court before the findings were signed.

Appellant contends further that a deed of trust cannot be reformed to make it include personal property which was not and did not become affixed to the realty so as to constitute a fixture. Herein we think appellant is being too technical. We have already said that the trial court was justified in finding it to have been the mutual intention of the parties· that the security instrument should place behind the loan all of the operative property of both utilities. █ That security instrument, denominated a deed of trust, could have been so drawn as to include both real and personal property. It is not at all uncommon for instruments denominated deeds of

trust to include personal property and to be executed and recorded as chattel mortgages as well as deeds of trust. This latter is done so as to comply with the requirements of the code as the way in which the chattel mortgages are to be executed and recorded, but this does not mean that a single security instrument cannot effectively include both real and personal property. (See *Title Ins. etc. Co.* v. *California Dev. Co.*, 171 Cal. 173 [152 P. 542].) We are not here concerned with the interests of third parties.

Appellant contends that the trial court erred in declaring the deed of trust operative as to after-acquired personalty included in the inventory. He points out that there is no clause in the deed of trust as executed purporting to cover any after-acquired property, operative or otherwise. There is no specific allegation in the complaint and no specific finding that the parties intended the security instrument should contain a clause applicable to after-acquired operative property. Courts reform instruments to express the actual understandings of the parties. They do not try to improve those understandings. ▉ A security instrument places a lien upon the property therein described and not upon the property thereafter acquired unless the instrument so declares or unless such property is so dealt with as to become by operation of law a part of the property covered by the lien. The complaint alleged that the parties intended the security instrument to cover the two described parcels of land and all structures located thereon. With respect to the electric utility it was alleged that the deed of trust was intended to include all generating equipment used whether located on the described land or not. With respect to the water utility a similar allegation was made. The court found that the parties intended the security instrument to cover all machinery and equipment used in the operation of the utilities "not located on the above described land" at the time of the execution and delivery of said deed of trust but used at that time in connection with the operation "of said utility business." It is thus apparent that there is neither allegation nor finding addressed to the matter of after-acquired property and in the absence thereof it was error to include such property in the reformed security instrument and to declare a lien thereon.

"In general, personalty brought onto mortgaged premises by the mortgagor, if not physically or constructively attached thereto, does not come under the mortgage unless the instru-

ment contains an appropriate after-acquired property clause.'' (175 A.L.R. 409.)

''In the absence of any express agreement on the subject, the lien created by a mortgage is limited to the property which is described in the mortgage, and does not include other property of the same character which the mortgagor may afterwards acquire and place with the mortgaged property.'' (16 Cal.Jur. 311.)

Section 51 of the Public Utilities Act (2 Deering's Gen. Laws, Act 6386) provides that:

''No public utility shall henceforth sell, lease, assign, mortgage or otherwise dispose of or encumber the whole or any part of its . . . property necessary or useful in the performance of its duties to the public, . . ., without first having secured from the railroad commission [now Public Utilities Commission] an order authorizing it so to do.''

It is also provided in section 52:

''The power of public utilities . . . to create liens on their property situated within this State is a special privilege, the right of supervision, regulation, restriction and control of which is and shall continue to be vested in the State, and such power shall be exercised as provided by law and under such rules and regulations as the commission may prescribe.''

Other regulatory provisions are contained in the act. Severe penalties are imposed upon utilities and their officers and operators for violation of these provisions. The act specifically declares that any encumbrance upon operative properties of utilities made without the prior permission of the commission are void. We think it beyond the power of a court of equity to do by reformation what the parties are forbidden to do themselves and that, even though the trial court justifiably found that the security instrument must be reformed in order to coincide with the parties' intentions, nevertheless having so determined it could not itself decree a lien and enforce the same until and unless the commission had consented that the lien be imposed. The court should have entered an interlocutory decree for reformation and then continued the case until application could be made to the commission for its consent that the lien be imposed in accordance with the findings and decree of the trial court. ■ Until and unless such consent has been obtained it is beyond the power of the trial court to place a lien upon the utility properties. On the other hand, we perceive no good reason why reformation cannot be accom-

plished in cases involving encumbrance of operative utility properties where a court of competent jurisdiction has declared it ought in justice to be done and upon application the commission is willing to consent to the decree insofar as it does impose a lien. If upon such application, notwithstanding the court's decree, the commission shall refuse its permission then the parties must be left where their own mistake has placed them, or, if the ground of reformation be fraud, the defrauded party must be relegated to his action for damages suffered by reason of such fraud.

As we have stated, the trial court, more than 60 days after the filing of notice of intention to move for a new trial, entered an order denying the motion but reducing the attorneys' fee below the amount adjudged. This order was ineffective. The court had no power at that time to make that order. (Code Civ. Proc., § 662; *Fong Chuck* v. *Chin Po Foon*, 29 Cal. 2d 552, 554 [176 P.2d 705].) Appellant complains that the court abused its discretion in awarding fees. He points to the fact that the judgment was for the sum of about $14,000 and says that, the whole record considered, the work performed did not justify so large a fee. But when the action was begun the amount due was $36,000, with interest, appellant having failed to pay any sum at all; the matters at issue both legally and factually were such as may well have required much time and labor; and the record reveals that appellant has unnecessarily increased the burdens of counsel. We cannot say there has been an abuse of discretion.

Respondent has filed a motion to dismiss upon the grounds that: 1. Appellant was adjudged in contempt by the trial court for wilful violation of that part of the judgment appealed from which restrained him from selling, transferring or otherwise disposing of any property covered by the deed of trust as reformed, and, 2. That the main contention on the appeal being that certain property was erroneously subjected to the deed of trust and said property having been destroyed by fire, the appeal has become moot. These contentions are without merit. It does appear that appellant was adjudged guilty of having violated the restraint provisions of the judgment and also that he underwent punishment for such contempt. Respondent cites no authorities in support of this ground of their motion to dismiss and, indeed, frankly concedes that their research has revealed none. This court likewise has found no such authorities. On reason we perceive no merit in the contention that such a violation with respect

to the judgment appealed from affords ground for dismissal. With respect to the destruction of certain property by fire we find it unnecessary to consider the merits of the motion since the affidavit of respondent in support thereof is merely upon information and does not purport to be from knowledge, whereas the affidavit of appellant in opposition to the motion is positive to the effect that although some of such property was destroyed by fire the greater part thereof was not. The evidence on the motion, therefore, is to the effect that a substantial portion of the property involved is in existence. The policy of the law is to decide appeals upon their merits. (*Clement* v. *Reclamation Board*, 89 Cal.App.2d 115, 118 [200 P.2d 196].)

The motion to dismiss is denied. The judgment appealed from is affirmed, except insofar as specific items of personal property have been placed under the security instrument without proof of correctness of the inventory returned by the receiver, and insofar as there has been included under the lien declared any after-acquired property not so dealt with as to become by law a part of the real property involved. As to such matters it is reversed. The cause is remanded to the trial court with instructions to take such further testimony as may be required to determine what items of personal property are to be included within the lien in accordance with the rulings here made, with leave to plaintiff to amend the complaint in respect of after-acquired property if it be claimed that the true contract of the parties embraced provisions that such property would come under the lien; and the trial court is further instructed, having determined these things, to enter an interlocutory decree for reformation in accordance with such determination and to then afford an opportunity to plaintiff to apply to the Public Utilities Commission for its consent. If the necessary consent is obtained then the court may proceed to foreclose the deed of trust as reformed. If such consent is refused then the court may proceed to foreclose the deed of trust as written. Each party shall pay his own costs on this appeal.

Adams, P. J., and Peek, J., concurred.