[No. F054515. Fifth Dist. Aug. 14, 2008.]

In re JESUS ESTEVEZ on Habeas Corpus.

**COUNSEL**

Jesus Estevez, in pro. per., for Petitioner Jesus Estevez.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Christopher J. Rench and Jennifer A. Neill, Deputy Attorneys General, for Respondent Anthony Hedgpeth, Warden.

Futterman & Dupree and Martin H. Dodd for Respondent J. Clark Kelso, Receiver.

## OPINION

**ARDAIZ, P. J.**—On February 14, 2006, in conjunction with a class action lawsuit filed several years earlier (*Plata v. Schwarzenegger* (N.D.Cal., No. C01-1351 TEH) (*Plata*)), the Honorable Thelton E. Henderson, Judge of the United States District Court for the Northern District of California, appointed a receiver (the Receiver) to "provide leadership and executive management of the California prison medical health care delivery system with the goals of restructuring day-to-day operations and developing, implementing, and validating a new, sustainable system that provides constitutionally adequate medical care to all class members as soon as practicable."[1] To this end, the Receiver was given the duty "to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of" the California Department of Corrections and Rehabilitation (CDCR). While developing "a detailed Plan of Action designed to effectuate the restructuring and development of a constitutionally adequate medical health care delivery system," the Receiver was to "undertake immediate and/or short term measures designed to improve medical care."

The order of appointment gave the Receiver "all powers necessary to fulfill [his] duties," including, but not limited to, "exercis[ing] all powers vested by law in the Secretary of the CDCR as they relate to the administration, control, management, operation, and financing of the California prison medical health care system," and it suspended the Secretary's exercise of such powers for the duration of the receivership. Expressly recognizing the receivership was "unprecedented in scope and dimension," the order further granted the Receiver the right to seek waiver of state laws, regulations, and contracts. Despite the nature of the remedy and breadth of the powers given the Receiver, no appeal was taken.[2]

As the focus of the federal court's order was the development and implementation of a systemic remedy, it did not expressly address the resolution of, or responsibility for, problems and disputes arising with respect to the medical care and treatment of individual inmates. This omission has had the consequence of creating a jurisdictional quagmire for courts of this state when attempting to address alleged deficiencies in the health care of individual prisoners. This in turn has created a conundrum for the very inmates whose health care the receivership exists to improve.

---

[1] We take judicial notice of the order appointing receiver filed February 14, 2006, in *Plata*. According to its terms, it does not encompass Pelican Bay State Prison, which is subject to the district court's jurisdiction in a separate case.

[2] An order appointing a receiver, although interlocutory, is appealable. (28 U.S.C. § 1292(a)(2).)

In this opinion, we hold that the appointment of the Receiver did not divest California courts of their constitutional jurisdiction over matters raised through habeas corpus, and that the Receiver is subject to that jurisdiction. We further hold that both the warden having physical custody of the inmate and the Receiver are necessary and proper parties to respond in such actions.

## PROCEDURAL HISTORY

On January 14, 2008, Jesus Estevez (Estevez), an inmate at Kern Valley State Prison, filed a petition for writ of habeas corpus with this court, alleging that he was being denied adequate medical treatment and care due to delay in providing, and ultimately cancellation of, surgery that had been recommended to treat a painful, longstanding spinal condition diagnosed as degenerative disk disease. Supporting exhibits showed his (1) medical diagnosis and recommended treatment; (2) exhaustion of administrative remedies; (3) filing of a petition for writ of habeas corpus in the superior court for the county in which he was incarcerated, resulting in a finding that he was receiving adequate care; and (4) correspondence with the Prison Law Office (class counsel in *Plata*), which made inquires on his behalf but ultimately was unable to take action. Estevez requested that we issue a writ, compelling the warden or chief medical officer of the prison to provide the correct medical treatment, including prompt surgery, pain medication, and postsurgical care, as recommended by an appropriate specialist.

Following receipt of Estevez's petition, we directed the Attorney General, whose duties include representing the state, warden, and prison personnel in these matters (Gov. Code, § 11040, subd. (b)), to file an informal response addressing, inter alia, whether the recommended surgery had been performed and, if not, why not.[3] The Attorney General responded that the warden had no authority over inmate care and was not in a position to respond due to the receivership, and that, to the extent relief could be provided, the Receiver now controlled the prison medical system and so was the proper party to respond. In turn, the Receiver advised us that the Attorney General had recently begun to assert that state courts lack jurisdiction over habeas corpus claims involving inmate medical care and/or the Receiver is the proper respondent, leading to inconsistent jurisdictional findings among Courts of Appeal.[4] Explaining that he was appointed to address the systematic problems

---

[3] We refer, at times, to the Attorney General instead of the warden or particular personnel. We recognize that the Attorney General appears as counsel for such parties, and not as a party in his own right.

[4] We take judicial notice of the docket (register of actions) entries and orders in *In re Wilkinson* (petn. for review den. Aug. 8, 2007, D051080), *Barker v. The People* (petn. for review den. Sept. 26, 2007, B196985), and *In re Goldstein* (petn. for review den. Oct. 2, 2007, A118925).

in the prison medical care system and not to defend individual claims, and suggesting state courts might indeed lack jurisdiction over such claims, the Receiver nonetheless "chose[] instead, after lengthy consideration, to address inmate medical habeas claims on the merits . . . ." Following review of Estevez's petition and file by a physician, the Receiver submitted an informal response in which he proposed what he denominated a "corrective action plan" (CAP). Under the CAP, Estevez would receive lumbar spine surgery and adequate pain management.

We determined that the Attorney General's response did not comply with our order of January 30, 2008, in part because the Attorney General provided no support for his assertions.[5] We suggested CDCR might be required to fulfill its statutory and constitutional obligations to provide appropriate medical care and treatment in the event the Receiver did not do so, and noted: "At the very least, the CDCR remains the custodian of inmates and, therefore, the proper respondent and a necessary party in any proceeding on habeas corpus initiated by an inmate seeking medical services." Accordingly, we ordered CDCR, its directors, managers, and wardens to file an informal response to Estevez's petition, addressing the issues of jurisdiction and authority, as well as whether Estevez had had the recommended surgery. The Attorney General responded by (1) providing what it viewed as supporting authority for its assertions that "the Receiver has taken over day-to-day control over all aspects of CDCR's medical delivery system" and "the federal court has suspended the authority of CDCR to oversee its medical system and all operations are now under the control of the Receiver," and (2) stating that Estevez had surgery on February 21, 2008.

In an order filed March 7, 2008, this court recognized that Estevez's having had surgery might moot the need to resolve medical issues unique to him. Nevertheless, in our view issues remained that were important to other inmates who needed guidance concerning to whom to look for medical services and, if adequate services were not provided, whether they should seek relief in federal or state court, as well as evident confusion on the part of state trial courts regarding jurisdiction. Accordingly, we directed CDCR and the Attorney General to file a joint supplemental response, addressing the appropriate administrative and judicial remedies to be pursued by inmates needing medical treatment, and describing the efforts made by CDCR and the Receiver to make inmates aware of their remedies. We further determined that the Receiver's response was deficient, in that it ignored the concerns

---

[5] In his reply to the Attorney General's response, Estevez observed that, before state inmates can file a habeas corpus petition, they must exhaust all administrative remedies. Their only means of appealing any policy or action is through the "602" appeal process, pursuant to which the warden can grant or deny relief. Estevez suggested this showed the warden was, in fact, in a position to respond.

expressed in this court's order of February 15, 2008. Accordingly, we directed the Receiver to file a supplemental response, addressing the issues and concerns stated in that order; the arguments and exhibits in the Attorney General's response filed February 28, 2008; and additional questions we posed, on the assumption state courts lack jurisdiction over CDCR's medical system, concerning procedures for bringing medical habeas corpus petitions before the appropriate federal court(s).

The Attorney General's subsequent response explained the inmate appeals process, as set out in title 15 of the California Code of Regulations, together with the additional instructions inmates are given regarding medical appeals. Apparently anticipating that health care appeals would soon be separated from the current appeals process and placed under direct control of the Receiver, the Attorney General explained that as of March 2008, inmates should pursue health care grievances through the standard inmate appeals process. As for judicial remedies, the Attorney General noted it appeared the Receiver was not going to raise any jurisdictional defense he might have, and so inmates could continue to file habeas corpus petitions in state courts for response by the Receiver.

The Receiver responded that Estevez had had surgery, and would continue to be monitored for pain management. The Receiver concluded that prison staff did not follow up on Estevez's medical needs as thoroughly or aggressively as they should have, but that a CAP had been implemented to ensure Estevez henceforth would receive appropriate and timely treatment. With respect to the issues not specific to Estevez, the Receiver generally agreed with the Attorney General "that the Receiver, and the Receiver alone, has 'jurisdiction' over both the provision of medical care to inmates and all functions in the CDCR that pertain to the delivery of medical care." Thus, "the Secretary of the CDCR and the custody officials no longer exercise any authority over the delivery of medical care in the prison."

The Receiver recognized that various courts have reached differing conclusions with respect to whether state courts retain jurisdiction over medical habeas corpus claims in light of the receivership, and found "compelling and persuasive arguments" to support both positions. Rather than "wade into the conceptual arguments," however, the Receiver announced his decision "instead to accede to state court jurisdiction so that the claims can be addressed on the merits," which he would do pursuant to his habeas corpus claims review procedure. The Receiver explained that inmates can informally correspond with his office (a specific unit of which responds to each inquiry, in some instances informing the inmate of the formal administrative appeal process or that he or she can contact the Prison Law Office for legal advice); participate in the administrative appeals ("602") process; or, once administrative remedies are exhausted, proceed to court. When a habeas corpus petition

is received from a court, counsel, the Attorney General, or another source, it is processed according to procedures set up by the Receiver, which include review by a staff physician and initiation of a CAP that is submitted to the particular court for review and potential adoption as the order governing the case. The Receiver further advised that he anticipated consolidation of management and oversight of all medical-care-related claims and inquiries into a single unit by July 2008, and was also seeking to have third level appeals regarding medical care reviewed by health care analysts rather than custody officials.

In his replies to the Receiver's and Attorney General's supplemental responses, Estevez acknowledged having had surgery, but argued, inter alia, that his petition was not moot because he had not received postsurgical care, therapy, and consultations, as recommended by his surgeon. Estevez further asserted that nothing had been given to inmates to apprise them of possible judicial remedies, whether state courts have jurisdiction, or who is the proper respondent when health care is at issue.

We found that the Attorney General's and Receiver's supplemental responses created substantial uncertainty regarding the jurisdiction of state courts; the power of CDCR to evaluate and provide for the medical needs of its inmates, as required by pertinent constitutional and statutory provisions; and the appropriate remedies for inmates seeking to challenge the adequacy of their medical care. Concluding it was "essential to the health and welfare of inmates that such uncertainty be removed," we asked for further briefing specifically addressing whether the federal court's orders divested state courts of the jurisdiction to hear and rule upon habeas corpus petitions alleging inadequate medical care of state prisoners, together with related issues.

The Attorney General responded by clarifying that it was not the position of CDCR or the warden that the federal court's orders in *Plata* divested state courts of habeas corpus jurisdiction when inmate medical care is at issue, but rather that the Receiver, not the warden, is now the proper respondent in such actions. The Attorney General contended there is concurrent jurisdiction between state and federal courts over CDCR's medical system; while the federal court and Receiver have control over that system, state courts retain jurisdiction to hear individual actions brought by inmates, and the Receiver is subject to state court orders issued in response to habeas corpus petitions regarding medical care. While the warden would remain as respondent since he or she has physical custody of the inmate, the Attorney General argued, courts could seek a response from the Receiver by designating him as the real party in interest. The Attorney General noted that, although the executive management of the prison health care system has been transferred from CDCR to the Receiver, the individuals within each prison who provide

medical care remain, for the most part, employees of the state, and *Plata* does not absolve them of their constitutional, statutory, and regulatory obligations to provide adequate medical care.

The Receiver also took the position that, subject to certain parameters established by federal statutory and Supreme Court authority, state courts retain jurisdiction to hear and rule upon petitions for habeas corpus based on alleged inadequate medical care of state prison inmates. In such actions, the Receiver or local medical staff would be either the respondent or the real parties in interest; state courts could properly request a response from the Receiver; and the Receiver would be subject to orders entered by the state courts in those cases. The Receiver further took the position that, unless a state law is waived by Judge Henderson or found by Judge Henderson to be inconsistent with the delivery of constitutionally adequate care, the duties and obligations imposed by state law upon CDCR to provide adequate medical care are preserved by the order appointing the Receiver. However, the responsibility for ensuring that those duties and obligations are met has been shifted exclusively to the Receiver and CDCR personnel that report to him, and any responsibility of the Secretary of CDCR and his custodial agents to comply with said duties and obligations has been suspended during the pendency of the receivership. The Receiver emphasized that CDCR continues to employ clinical and administrative staff necessary for the delivery of medical care to inmates at the local prison level and that, while such staff ultimately answers to the Receiver and his managerial team, the day-to-day delivery of medical care remains with CDCR employees at the state prisons.

Finding that the positions taken on some issues by the Attorney General and Receiver in their pleadings filed May 7, 2008, were in conflict with positions taken in earlier pleadings, that the jurisdictional issues have been the subject of conflicting decisions of various Courts of Appeal, and that it is essential to the health and welfare of inmates that uncertainty regarding the power of state courts over the Receiver and CDCR and the duties and obligations of the wardens and CDCR staff be removed, this court issued an order to show cause.

The Attorney General filed a return on behalf of the warden. In pertinent part, the warden again asserted that the Receiver, not he, is the proper respondent for challenges to prison medical care; however, the warden expressly stated he did not assert that California courts lack jurisdiction to hear and determine the merits of habeas corpus petitions challenging the adequacy of medical care in California prisons. The warden further asserted that the matter is moot, inasmuch as Estevez has received the requested surgery. He also claimed that, since Estevez's petition only challenged the fact he had not received recommended surgery, issues concerning the jurisdiction of state courts to hear medical habeas corpus matters in light of *Plata*,

the validity of the orders in *Plata*, inmates' available administrative and judicial remedies, and whether the Receiver must comply with orders of California courts, are not currently before this court and should not be considered.

In his return, the Receiver also asserted that the petition is moot, since Estevez has received the surgery requested and is receiving adequate medical care, including pain management. The Receiver further claimed that this court's questions, stated in its order to show cause, go well beyond the allegations in the petition, so that the Receiver should not be required to respond to them. He asserted that Estevez has not challenged the authority of the federal court to appoint the Receiver or to issue orders related to the same; has not questioned the jurisdiction of state courts to hear habeas corpus petitions in light of the receivership or claimed that the receivership divests such courts of jurisdiction over habeas corpus claims regarding inmate medical care; and has not suggested the Receiver has refused to follow any lawful order of this or any other state court.

Estevez submitted a separate traverse to each return. He disputed the notion that the case is moot, claiming (1) he is not receiving adequate postsurgical treatment because postsurgery orders are not being followed, and (2) he is not being monitored to ensure management of his back pain, as required by the CAP. Estevez agreed that California courts do not lack jurisdiction to hear habeas corpus actions concerning medical issues, but argued the various issues are properly before this court because "the door was open[ed]" by all involved. In a separate letter, Estevez requested an order of discovery that would allow him to review his medical records and obtain copies of specialist reports and recommendations to demonstrate the need for postsurgical care, and he requested an evidentiary hearing in the matter.

## DISCUSSION

We turn first to the Attorney General's and Receiver's arguments that the instant petition is moot because Estevez has received his surgery, and that the questions of state court jurisdiction and related issues are not properly before us and so should not be addressed. We disagree on both points.

The relief requested in Estevez's petition included adequate postsurgical medical care. In his traverses, he alleged he is not receiving such care and treatment because postsurgery orders are not being followed and he is not being monitored to ensure proper management of his back pain. In light of these assertions, a factual dispute remains concerning whether Estevez has received the relief requested; hence, an actual controversy exists upon which this court remains capable of granting effectual relief. (See *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924].)

■ Moreover, this case presents an issue of great public import that transcends the interests of this particular petitioner (see *In re Walters* (1975) 15 Cal.3d 738, 744 [126 Cal.Rptr. 239, 543 P.2d 607]; *In re Sodersten* (2007) 146 Cal.App.4th 1163, 1217–1218 [53 Cal.Rptr.3d 572]): the jurisdiction of state courts, following institution of a federal receivership, over habeas corpus petitions filed by state prison inmates alleging deficient medical care, and the appropriate parties to respond thereto. It is axiomatic that a prisoner, who is required to exhaust his or her administrative remedies before bringing a grievance to court (*In re Dexter* (1979) 25 Cal.3d 921, 925 [160 Cal.Rptr. 118, 603 P.2d 35]; *In re Muszalski* (1975) 52 Cal.App.3d 500, 503, 508 [125 Cal.Rptr. 286]), must be aware of the administrative procedures through which to seek relief and, if they are unavailing, must know to which court—state or federal—to turn in order to vindicate his or her rights.

We are somewhat surprised that the Attorney General and Receiver now take the position that the jurisdictional issue is not before us. It is true that Estevez has never challenged our jurisdiction to act on his petition. The Attorney General and Receiver, however, both appeared to take the position, at least initially, that the jurisdiction of state courts in matters such as this is unclear, and that, while state courts might indeed lack jurisdiction, the Receiver would nevertheless "accede" to it. Although Estevez has not contended the Receiver has failed to comply with a lawful order of court (and our briefing orders did not intend to suggest such a scenario), the initial responses raised uncertainty as to whether a lawful order could in fact be made by a state court. Thus, while the Attorney General and Receiver may now agree state courts retain jurisdiction, their past positions have led to inconsistent findings on the issue among state appellate courts, and have left superior courts—the courts that are, generally speaking, the courts of first resort for inmates who have exhausted their administrative remedies—without guidance.

■ We recognize that the parties' pleadings define the issues in habeas corpus proceedings. (*Board of Prison Terms v. Superior Court* (2005) 130 Cal.App.4th 1212, 1235 [31 Cal.Rptr.3d 70].) Thus, when an order to show cause issues, " 'it is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition.' " (*People v. Duvall* (1995) 9 Cal.4th 464, 475 [37 Cal.Rptr.2d 259, 886 P.2d 1252].) It has been held that, under this process, "the issues to be addressed may not extend beyond the claims alleged in the habeas corpus petition. Thus, respondent may not raise additional issues in its return. [Citation.]" (*Board of Prison Terms, supra*, at p. 1235.)

Here, of course, one of the issues is precisely who is "respondent." Moreover, as the question of jurisdiction is always fundamental (*Kroneberger v.*

*Superior Court* (1961) 196 Cal.App.2d 206, 208 [16 Cal.Rptr. 339]), "a court has inherent power to inquire into jurisdiction of its own motion, regardless of whether the question is raised by the litigants. [Citations.]" (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 302–303 [109 P.2d 942].) Given the number of prisons within our territorial jurisdiction, the need to provide a uniform answer for the superior courts in our district, if not the state, with respect to state court habeas corpus jurisdiction vis-à-vis a federal receivership and in regard to the proper responsive party or parties, is manifest. To the extent possible, these issues simply should not require redetermination, or be subject to conflicting decisions and interpretations, every time a state prison inmate presents a petition for writ of habeas corpus alleging inadequate medical care.

■ We asked the parties to address certain questions that went beyond strictly the jurisdictional issue. While requirements of ripeness " 'prevent[] courts from issuing purely advisory opinions, or considering a hypothetical state of facts in order to give general guidance rather than to resolve a specific legal dispute' [citation]" (*In re Joshua S.* (2007) 41 Cal.4th 261, 273 [59 Cal.Rptr.3d 460, 159 P.3d 49]), our questions related to the issues before us (see *Turner v. Fouche* (1970) 396 U.S. 346, 353, fn. 10 [24 L.Ed.2d 567, 90 S.Ct. 532]). Additionally, they were asked in order to help us understand the interplay between state habeas corpus jurisdiction and federal receiverships, concerning which, as the parties recognize, case authority is virtually nonexistent.

We turn now to an assessment of that interplay, and the effect of a federal receivership on our jurisdiction.

■ "Pursuant to its equity jurisdiction [(U.S. Const., art. III, § 2, cl. 1)], a federal court has power to take broad remedial action to effectuate compliance with its orders. This equitable power includes the power to appoint a receiver. [Citations.]" (*Dixon v. Barry* (D.D.C. 1997) 967 F.Supp. 535, 550; see, e.g., *Morgan v. McDonough* (1st Cir. 1976) 540 F.2d 527, 533.) "While traditionally courts appoint receivers to protect tangible property of a business pending a judicial determination of a related lawsuit, various courts have appointed receivers to protect constitutional and statutory rights in a variety of circumstances. [Citations.] [¶] . . . [A] court may appoint a receiver to force public officials to comply with court orders. [Citations.] Courts have used receivers to coerce public officials to comply with legal mandates in a number of factual settings, including public schools, housing, highways, nursing homes, and prisons." (*Dixon v. Barry, supra*, 967 F.Supp. at p. 550; see, e.g., *Morgan v. McDonough, supra*, 540 F.2d at pp. 533–535 [school district]; *Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation (No. 1)* (1997) 424 Mass. 430 [677 N.E.2d 127, 131, 151]

[state Dept. of Mental Health]; *Crain v. Bordenkircher* (1988) 180 W.Va. 246 [376 S.E.2d 140, 143] [prison]; *Perez v. Boston Housing Authority* (1980) 379 Mass. 703 [400 N.E.2d 1231, 1248–1251] [city housing authority].) Nevertheless, "the substitution of a court's authority for that of elected and appointed officials is an extraordinary step warranted only by the most compelling circumstances." (*Morgan v. McDonough, supra,* 540 F.2d at p. 535.)

■ Receivers are officers of the court appointing them. (*Hosford v. Henry* (1951) 107 Cal.App.2d 765, 772 [238 P.2d 91]; *United States v. Smallwood* (8th Cir. 1971) 443 F.2d 535, 539.) They have no judicial powers per se (*Hosford v. Henry, supra,* 107 Cal.App.2d at p. 772), but act under the authority of the appointing court and possess those powers conferred by the order of appointment and the course and practice of that court (*Atlantic Trust Co. v. Chapman* (1908) 208 U.S. 360, 371 [52 L.Ed. 528, 28 S.Ct. 406]; *In re San Vicente Medical Partners Ltd.* (9th Cir. 1992) 962 F.2d 1402, 1409). It is sometimes said that a receiver "stands in the shoes of" the entity as to which a receivership has been instituted. (See, e.g., *Ledo Financial Corp. v. Summers* (9th Cir. 1997) 122 F.3d 825, 829; *Gaskill v. Gordon* (7th Cir. 1994) 27 F.3d 248, 251.) Whatever the general accuracy of this description, especially in cases involving business or property concerns, "an equity receiver does not merely inherit an owner's rights; the receiver is an officer of the court entrusted with administration of the property. [Citations.]" (*Gaskill v. Gordon, supra,* at p. 251.) The receiver's possession of the property—or, in this case, his operation of the medical delivery component of CDCR—" 'is that of the court . . . . [Citations.]' " (*Pacific Indem. Co. v. Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d 35, 40 [65 Cal.Rptr. 429], fn. omitted.)

■ A receiver appointed by a federal court must manage and operate the property in his or her possession according to the requirements of the valid laws of the state in which the property is situated, in the same manner the owner or possessor of the property would be bound to do if in possession of it. (28 U.S.C. § 959(b); 65 Am.Jur.2d (2008) Receivers, § 135.) The effect of this statute on a receiver appointed to oversee compliance with constitutional mandates is unclear, except that it does not apply where state law provisions conflict with federal laws or the United States Constitution. (See *Gillis v. California* (1934) 293 U.S. 62, 65 [79 L.Ed. 199, 55 S.Ct. 4].) Moreover, while a federal court's powers, as implemented through a receiver, may be at once broader than, and more limited than, the powers of the public authority in whose place and stead the receiver acts (see *Swann v. Board of Education* (1971) 402 U.S. 1, 16 [28 L.Ed.2d 554, 91 S.Ct. 1267]), "[o]nce a right and a [constitutional] violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad . . . ." (*Id.* at p. 15.)

■ In the present case, the federal court expansively gave the Receiver "all powers necessary" to fulfill his duties under the order appointing him. These seemingly extensive powers are not, however, unlimited. We are not called upon to determine those limits or to decide whether, or to what extent, the Receiver can lawfully act outside the processes established under state constitutional or statutory law, whether budgetary or otherwise. Such questions are not before us in the present proceeding, and we leave them for determination in an appropriate case. It needs no citation to authority, however, to say that a federal court cannot grant to a receiver powers it does not itself possess. A receiver's authority does not exist independent of the authority of the appointing court, and he or she cannot act in derogation of fundamental constitutional principles of due process—notice and an opportunity to be heard—any more than a federal judge can. Notwithstanding the supremacy clause (U.S. Const., art. VI, cl. 2), there are limits on a federal court's power to override state constitutional and statutory provisions; principles of comity and state sovereignty require that such action be undertaken by a court only in exceptional circumstances. (See *In re Thompson* (10th Cir. 1990) 894 F.2d 1227, 1232–1233 [" 'federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests . . .' "].) It cannot be inferred, from a broad grant of general authority, that a receiver is permitted to override state law, absent the explicit direction, arrived at pursuant to procedures comporting with due process, of the appointing court.

■ "[U]nder our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, [the United States Supreme Court has] consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States. [Citations.]" (*Tafflin v. Levitt* (1990) 493 U.S. 455, 458 [107 L.Ed.2d 887, 110 S.Ct. 792].) We are thus competent to adjudicate claims arising under the Eighth Amendment to the United States Constitution, which is violated by "deliberate indifference to serious medical needs of prisoners." (*Estelle v. Gamble* (1976) 429 U.S. 97, 104 [50 L.Ed.2d 251, 97 S.Ct. 285].)

■ "The right to file a petition for a writ of habeas corpus is guaranteed by the state Constitution (Cal. Const., art. I, § 11), and regulated by statute ([Pen. Code,] § 1473 et seq.)." (*In re Harris* (1993) 5 Cal.4th 813, 824–825 [21 Cal.Rptr.2d 373, 855 P.2d 391].) Article VI, section 10 of the California Constitution gives the state Supreme Court, Courts of Appeal, superior courts, and their judges original jurisdiction in habeas corpus proceedings. "The function of the writ of habeas corpus is solely to effect 'discharge' from unlawful restraint, though the illegality in respect to which the discharge from restraint is sought may not go to the fact of continued detention but may be

simply as to the circumstances under which the prisoner is held . . . ." (*In re Chessman* (1955) 44 Cal.2d 1, 5–6 [279 P.2d 24].) Thus, alleged violations of the Eighth Amendment arising from inadequate medical care may be brought to courts' attention in California by means of a petition for writ of habeas corpus.[6]

■ "Habeas corpus may not be suspended unless required by public safety in cases of rebellion or invasion." (Cal. Const., art. I, § 11.) In light of the importance the United States Supreme Court recently has placed on the similarly worded suspension clause contained in the federal Constitution (*Boumediene v. Bush* (2008) 553 U.S. ___, ___–___ [171 L.Ed.2d 41, 128 S.Ct. 2229, 2246–2247]); the fact "[i]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons" (*Preiser v. Rodriguez* (1973) 411 U.S. 475, 491–492 [36 L.Ed.2d 439, 93 S.Ct. 1827]); and the constraint principles of federalism and comity place upon federal court interference with state court proceedings (see *International Ass'n of Mach. & Aero. Wkrs. v. Nix* (5th Cir. 1975) 512 F.2d 125, 129 [construing 28 U.S.C. § 2283]), we conclude any ouster of state courts' constitutionally given jurisdiction must be explicit, unambiguous, and express, to the extent it may be accomplished by a federal court at all. Absent a specific and explicit order by the federal district court that suspends state constitutional habeas corpus authority as being inconsistent with the appropriate protection of the constitutional and statutory rights of inmates, we know of no authority by which a federal judge—much less a receiver—can suspend the powers of this court. ■ Accordingly, we hold that, despite the receivership, California courts retain jurisdiction over the state prison system in general and inmates' claims of inadequate medical care in particular. It necessarily follows that, since the Receiver is now in charge of the California prison medical health care delivery system, California courts also have jurisdiction over him.[7]

■ In our view, both the Receiver and the warden of the prison at which the individual petitioner is incarcerated (through his or her counsel, the

---

[6] The function of habeas corpus in California differs somewhat from the function of the federal writ in this regard. In the federal system, habeas corpus proceedings are the mechanism whereby a prisoner can challenge the legality or duration of his or her confinement. Conditions of confinement, on the other hand, are more appropriately challenged by means of a civil rights action brought pursuant to 42 United States Code section 1983. (*Badea v. Cox* (9th Cir. 1991) 931 F.2d 573, 574; see *Wilkinson v. Dotson* (2005) 544 U.S. 74, 78–82 [161 L.Ed.2d 253, 125 S.Ct. 1242]; *Nelson v. Campbell* (2004) 541 U.S. 637, 643 [158 L.Ed.2d 924, 124 S.Ct. 2117].)

[7] Were we to conclude otherwise, the practical effect would be the suspension of our habeas corpus power, contrary to the express provisions of article I, section 11, of the California Constitution, without the requisite specific finding necessary to exercise such extraordinary authority.

Attorney General) are necessary and proper parties to respond to a petition for writ of habeas corpus alleging inadequate medical care—the Receiver, because he controls the delivery of medical care within the prison system; and the warden, because he or she controls the person of the inmate, i.e., has physical custody.[8] Although perhaps immaterial since habeas corpus pleadings are generally captioned "In re [Petitioner's Name] on Habeas Corpus," inasmuch as Penal Code section 1477 requires that the writ of habeas corpus "be directed to the person having custody of or restraining the person on whose behalf the application is made," the warden would appear to be the respondent, while the Receiver would appear to be the real party in interest. (See Cal. Rules of Court, rule 4.551(b)(1) [permitting court to request informal response in habeas corpus action from real party in interest].) Regardless of what these parties are called, each should be served with a copy of all pleadings in a medical habeas corpus proceeding.

Having established our jurisdiction over the instant proceeding and the proper parties thereto (all of whom are before this court), we turn at last to what, if any, relief should be granted in the present case. It is undisputed that Estevez has had the recommended surgery, but, as previously described, he alleges that he is not receiving adequate postsurgical care and treatment as requested in his petition. We will direct the Receiver and warden to investigate Estevez's postsurgical care and treatment, including pain management, and make a report regarding same to the Kern County Superior Court. That court will then conduct further proceedings and make further orders as appropriate. (See *West v. Keve* (3d Cir. 1978) 571 F.2d 158, 161.)

By way of a petition for rehearing, the Attorney General, on behalf of the warden, requests that we modify our opinion to provide that the warden is only a necessary and proper party, and need only respond in the instant action, to the extent necessary to establish the legality of the inmate's

---

[8] In asserting jurisdiction over the Receiver, we recognize that, generally speaking, a receiver may not be sued without leave of the court that appointed him or her. (*Barton v. Barbour* (1881) 104 U.S. 126, 128 [26 L.Ed. 672].) As the Receiver recognizes, however, 28 United States Code section 959(a), which provides an exception "with respect to any of [a receiver's] acts or transactions in carrying on business connected with" the property under receivership, appears to permit the litigation in state courts of medical habeas corpus cases without permission of Judge Henderson. (See *Carter v. Rodgers* (11th Cir. 2000) 220 F.3d 1249, 1254 [statute permits actions redressing torts committed in furtherance of business].)

We leave for another day issues that might arise should there be a conflict between state court orders regarding inmate medical care and the health care delivery system the Receiver is in the process of developing, recognizing that principles of federal supremacy (U.S. Const., art. VI, cl. 2; see, e.g., *Free v. Bland* (1962) 369 U.S. 663, 666 [8 L.Ed.2d 180, 82 S.Ct. 1089]; *U.S. v. Napier* (6th Cir. 2000) 233 F.3d 394, 404), as well as limitations on the power of federal courts (see, e.g., 28 U.S.C. § 2283; *Atlantic C. L. R. Co. v. Engineers* (1970) 398 U.S. 281, 294–295 [26 L.Ed.2d 234, 90 S.Ct. 1739]) may come into play.

physical custody. The Attorney General asserts that the Receiver is the sole and proper party to respond to medical claims.

 We decline to make the requested modification. To the extent that the warden does not have control over an inmate's medical care due to specific restraints imposed by statute or court order, the warden may defer to such party as is legally mandated to provide the requisite care—at this juncture, the Receiver. However, we do not read the orders in *Plata* so broadly that we can conclude, with certainty, that responsibility for all inmate medical care has been removed from the state, regardless of the adequacy of care provided by a delegated authority. In part, we so conclude because the state, and through its appointed representative, the warden, cannot abdicate its constitutional responsibility to provide adequate medical care, concomitant with which is the duty to assure said care is not dispensed without any regard for the effect on the prison system as a whole. That responsibility is uniquely that of the warden as representative of the state, as opposed to being that of the Receiver. In short, the existence of the orders in *Plata*, and the appointment of the Receiver, do not relieve the state of its constitutional responsibility to determine whether adequate care is in fact being provided, or whether the proposed medical care or actions to facilitate that care are inconsistent with the state's overall constitutional responsibility for public safety and welfare.

Further, we reject the Attorney General's assertion that, if the warden and Receiver have conflicting conclusions regarding the adequacy of an inmate's medical care, the warden's position on the merits will be irrelevant because he is powerless to make any decision relative to such care or to direct the Receiver to provided care. The warden presently may be powerless in this regard, but this does not render his position on the merits irrelevant: as previously discussed in our opinion, the courts of this state retain power, pursuant to their habeas corpus jurisdiction, to make orders with respect to inmate medical care and, assuming no conflict between those orders and the Receiver's developing health care delivery system, to impose those orders upon the Receiver. Thus, at the very least, any disagreement between the warden and the Receiver regarding the adequacy of an inmate's medical care should be fully aired before the court in question so that it may be fully informed in determining the appropriate course of conduct with respect to the issues before it. Taken to its logical conclusion, the Attorney General's position would obligate the warden to accept unquestioningly any decision of the Receiver, regardless of its impact on the entire system, and would require courts to render habeas corpus decisions on medical care issues without input from the one party who is legally required to consider the effect on the entire prison itself and, by extension, the state prison system as a whole.

## DISPOSITION

Let a writ of habeas corpus issue directing the Kern County Superior Court to (1) vacate the order dated December 19, 2007, and filed in Kern County Superior Court action No. HC10332A denying the petition for writ of habeas corpus, (2) conduct further proceedings pursuant to California Rules of Court, rule 4.551, and (3) make further orders as appropriate.

The Receiver and warden are directed to investigate whether Estevez is receiving adequate postsurgical medical care and treatment and to file a summary of their investigations and conclusions with the Kern County Superior Court on or before 30 days from the date of this opinion or such other date as may be set by the Kern County Superior Court in Kern County Superior Court action No. HC10332A.

To the extent it seeks relief other than that set out in this opinion, the petition for writ of habeas corpus is denied. The order to show cause is discharged.

Cornell, J., and Kane, J., concurred.

A petition for a rehearing was denied September 8, 2008, and the opinion was modified to read as printed above.